UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------ X

GENE RAGUSA,                                              :
                                                          :
                                    Plaintiff,            :
                                                          :
                    -against-                             :
                                                          :
CITY OF NEW YORK, RAYMOND KELLY,                          :
MICHAEL BLOOMBERG, MATHEW                                 :
PERRONE, AHMED KHAN, and KEVIN                            :
DIMINO,                                                   :
                                                          :
                                    Defendants.           :
------------------------------------------------------------ X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 1/22/2016

12-CV-7294 (VEC)

OPINION AND ORDER

VALERIE CAPRONI, United States District Judge:

Gene Ragusa sued Mathew Perone, Ahmed Khan, and Kevin Dimino (the "Defendants"),

all members of the New York City Police Department, for violating his civil rights in connection

with a car stop that occurred on June 29, 2011.  The case was tried by a jury, and the jury

returned a verdict of $40,001.00 for Plaintiff.  The Plaintiff also alleges claims pursuant to

*Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978), against the City of New York, Michael

Bloomberg, and Raymond Kelly (the "*Monell* Defendants" or "*Monell* Claims").  The *Monell*

claims were severed before trial.  Defendants now move (1) to dismiss Plaintiff's remaining

*Monell* Claims; and (2) to reduce the jury verdict and award pursuant to Rule 59 of the Federal

Rules of Civil Procedure.  Defendants' Motion is DENIED.

**STATEMENT OF FACTS**

On June 29, 2011, Plaintiff was pulled over by the Defendants around midnight in

Brooklyn, New York for no legitimate law enforcement reason.  Trial Tr. 30:4-31:21.  The

Defendants were in plain clothes, and Plaintiff could not see the officer's badges or badge

numbers.  *Id.* 31:1-16; 40:9-41:10.  According to the Plaintiff, the officers were aggressive; they

swore at him and Officer Perrone tried forcibly to pull him from the car (Ragusa had his seat belt on, thwarting the officer's efforts physically to remove him from the car).[1]  *Id.* 32:23-33:20. Plaintiff testified that he suffered significant pain to his shoulder, arm, and neck as a result of the officer attempting to pull him from the car.  *Id.* 33:21-34:3; 50:2-10.

Officer Khan conducted a pat-down of Plaintiff, searched his pockets, and then ordered him to empty the contents of his pockets.  *Id.* 35:18-37:24.   Plaintiff was detained for approximately fifteen to twenty-five minutes before the Defendants said he could go.  *Id.* 48:14-19; 65:1-4.[2]

Plaintiff continued to suffer shoulder pain and a limited range of motion for one to two weeks following the incident.  Plaintiff did not seek medical treatment.  *Id.* 50:8-15; 53:19-24; 66:8-24.  At the time of trial, Plaintiff had recovered from his injuries.  *Id.* 50:14-15.

Plaintiff also testified to various mental and emotional injuries from the incident.  He explained that, because the officers were in plain-clothes and he could not clearly see their badges, he was scared because he was not sure they were actually police officers and thought they might be robbing him.  *Id.* 51:6-16.  Plaintiff testified that his mental and emotional injuries included insomnia, anxiety, and fear of being pulled over and mistreated again.  *Id.* 50:18-51:23. Plaintiff indicated that this fear causes him to drive less, and he suffers anxiety when he hears sirens.  *Id.* 52:19-53:4; 51:19-23.  Plaintiff did not seek medical or psychological care for these mental and emotional symptoms.  *Id.* 53:19-24.

The jury found that Plaintiff proved that each of the individual officers stopped him without reasonable suspicion, *id.* 241:19-242:1, and that Officer Khan frisked him without

---

[1]      After the officer tried to drag him from the car, Ragusa removed his seat belt and got out.  *Id*. 34:4-8.

[2]      The jury heard only Plaintiff's version of the events as the Defendants professed to have no recollection of the stop.  They testified solely on the basis of their memo books and a "Stop, Question and Frisk Report Worksheet," or "UF-250," that had been prepared by Officer Perrone around the time of the events.

reasonable suspicion or in a manner that went beyond a "frisk," *id.* 242:2-5.  The jury also found,

however, that Plaintiff did not prove that his vehicle was searched without probable cause.  *Id.*

242:6-11.  In terms of damages, the jury found that the unlawful stop was the proximate cause of

injury and awarded Plaintiff $40,000.00 in compensatory damages, *id.* 242:12-18, but also found

that the unlawful frisk was not the proximate cause of any injury and therefore awarded him

$1.00 in nominal damages on that claim.  *Id.* 242:19-243:1.  Finally, the jury found that the

Plaintiff did not prove that any Defendant acted maliciously or wantonly.  *Id.* 243:2-17.

After the verdict was announced, Defendants moved for judgment notwithstanding the

verdict, which this Court denied from the bench as against the weight of the evidence.  *Id.*

246:12-24.  Defendants also moved to alter the verdict as excessive and to dismiss Plaintiff's

*Monell* Claims.

## DISCUSSION[3]

### I.   Defendants' Motion to Dismiss Plaintiff's *Monell* Claims is Denied

Defendants first argue that the Court should dismiss Plaintiff's *Monell* Claims because

the law does not permit double recovery for compensatory damages and Plaintiff's injuries from

the unlawful stop have already been compensated through the jury's award.  Defs. Mem. at 6

(citing *Bender v. City of New York*, 78 F.3d 787, 793 (2d Cir. 1996)).  Plaintiff concedes that an

injury can only be compensated once, Pl. Opp'n at 7, but argues that his interest in obtaining a

judgment against the City is not fully vindicated by a verdict against individual officers.  Plaintiff

asserts that he could proceed against the *Monell* Defendants for nominal damages and injunctive

or other equitable relief arising from their alleged unlawful practices.  *Id.* at 7-8.  Plaintiff

---

[3]     In addressing the Defendants' Motion, the Court refers to each party's brief-in-chief, response, and reply as
Party "Mem.," "Opp'n," and "Reply" respectively.

requests that he be allowed to again amend his complaint specifically to request this alternative

relief.  *Id.* at 8.[4]

As the Amended Complaint currently stands, the Court questions whether Plaintiff has

actually stated a claim pursuant to *Monell*.  When a party requests leave to amend, however,

permission is freely given when justice so requires.  *See* Fed. R. Civ. P. Rule 15(a)(2); *see also*

*Foman v. Davis*, 371 U.S. 178, 182 (1962).  That is particularly true for *pro se* plaintiffs.

*Grullon v. City of New Haven*, 720 F.3d 133, 139 (2d Cir. 2013) (quoting *Chavis v. Chappius*,

618 F.3d 162, 170 (2d Cir. 2010)).

Having succeeded on his individual claim (the hurdle that trips up many 1983 plaintiffs),

Plaintiff might be able to state a *Monell* claim based on the "stop and frisk program" of New

York City, which was in full swing at the time of this incident.  Am. Compl. at III(C).

Accordingly, the Court will grant Plaintiff, who is now represented by able *pro bono* counsel,

leave to amend his complaint against the *Monell* Defendants.  To the extent that the new

Amended Complaint fails to state a claim, the *Monell* Defendants are, of course, free to move to

dismiss.[5]

---

[4]     Plaintiff, acting *pro se*, amended his Complaint once before.  Am. Compl. (Dkt. 20).

[5]     Defendants argue that "allowing plaintiff to pursue further claims against the City would serve no societal
function, and would only cost the City of New York and its taxpayer-citizens additional expense – in the form of
attorney's fees and costs – for an issue which has already been litigated" in *Floyd v. City of New York*, 959 F. Supp.
2d 540 (S.D.N.Y. 2013).  Defs. Reply at 4-5.  The Defendants may be right, but it is not clear to the Court whether
*Floyd* dealt with car stops that were falsely represented to be *Terry* stops of pedestrians.  Moreover, it is unclear
whether the reforms of the NYPD's policies and procedures that grew out of *Floyd* dealt with car stops at all.
Whether the stop and frisk policy damaged Mr. Ragusa and whether he might be entitled to injunctive relief remain
issues to be decided after Plaintiff files a Second Amended Complaint addressing his *Monell* claims.

## II.    The Jury's $40,000.00 Award Does Not Shock the Judicial Conscience

Defendants argue that "[i]n light of the limited length of Plaintiff's detention and the limited extent of alleged damages, the jury's verdict is intrinsically excessive and shocking to the judicial conscience, and should therefore be reduced . . . to, at most, $5,000, which is still more than the average award for a stop of such a short duration." Defs. Mem. at 8, 11. Plaintiff, however, responds that Defendants' suggested amount reflects "a flawed and narrow analysis of the comparable awards and fails to fairly acknowledge the various categories of injuries suffered by Mr. Ragusa." Pl. Opp'n at 9. The Court agrees that Defendants have not met the high threshold of demonstrating that the award should be reduced.

Under Rule 59(e) of the Federal Rules of Civil Procedure, a district court has discretion to alter or amend a judgment "to correct a clear error of law or prevent manifest injustice." *Munafo v. Metro. Transp. Auth.*, 381 F.3d 99, 105 (2d Cir. 2004) (internal quotation omitted). "'This discretion includes overturning verdicts for excessiveness and ordering a new trial without qualification, or conditioned on the verdict winner's refusal to agree to a reduction (remittitur).'" *Kirsh v. Fleet St., Ltd.*, 148 F.3d 149, 165 (2d Cir. 1998) (quoting *Gasperini v. Ctr. for Humanities, Inc.*, 518 U.S. 415, 433 (1996)). "Courts 'are constrained to give due deference to the fact-finding role of the jury when reviewing a claim of excessive damages.'" *Thomas v. Kelly*, 903 F. Supp. 2d 237, 262 (S.D.N.Y. 2012) (quoting *Graham v. Federated Dep't Stores, Inc.*, 907 F.2d 1348, 1353 (2d Cir. 1990)); *see also Ahlf v. CSX Transp., Inc.*, 386 F. Supp. 2d 83 (N.D.N.Y. 2005) ("'A jury verdict is not, certainly, something lightly to be set aside.'" (quoting *Nairn v. Nat'l R.R. Passenger Corp.*, 837 F.2d 565, 566 (2d Cir. 1988)). "Where there is no particular discernable error, [the Second Circuit has] generally held that a jury's damage award may not be set aside as excessive unless 'the award is so high as to shock the judicial conscience and constitute a denial of justice.'" *Kirsh*, 148 F.3d at 165 (quoting *O'Neill v. Krzeminiski*, 839

F.2d 9, 13 (2d Cir. 1988)); *see also Sinkov v. Americor, Inc.*, 419 F. App'x 86, 92-93 (2d Cir.

2011) (summary order).[6]

To determine whether an award shocks the judicial conscience, "courts canvass the

amounts awarded in comparable cases and determine whether the award falls within the

reasonable range." *Guzman v. Jay*, 303 F.R.D. 186, 197 (S.D.N.Y. 2014) (internal quotations

omitted); *see also Sinkov*, 419 F. App'x at 93 (To determine if a compensatory award is "so large

as to shock the judicial conscience, [the court] look[s] to other awards in similar cases."). This

determination is fact specific and inherently imprecise. "In determining whether a particular

award is excessive, courts have reviewed awards in other cases involving similar injuries,

'bearing in mind that any given judgment depends on a unique set of facts and circumstances.'"

*Scala*, 985 F.2d at 684 (quoting *Nairn*, 837 F.2d at 568); *Thomas v. Kelly*, 903 F. Supp. 2d at

262. "'Because there is no precise way in which to calculate damages for pain and suffering, the

jury's award should not be disturbed unless 'the quantum of damages found by a jury is clearly

outside the maximum limit of a reasonable range.'" *Guzman*, 303 F.R.D. at 197 (quoting *Ahlf*,

386 F. Supp. 2d at 87). Therefore, a court inquires simply whether the award is within a

reasonable range. *Sinkov*, 419 F. App'x at 93. ("[O]ur task is not to balance the number of high

and low awards and reject the verdict in the instant case if the number of lower awards is

greater" but instead to "inquire whether the . . . verdict is within reasonable range." (internal

quotation omitted)) "A verdict shocks the judicial conscience 'only if it surpasses an upper limit,

---

[6]    Defendants urge the Court to consider the more restrictive standard under New York law that the jury
award is "'excessive or inadequate if it deviates materially from what would be reasonable compensation.'" Defs.
Mem. at 9-10 (quoting N.Y. C.P.L.R. § 5501(c)); Defs. Reply at 5.  But because the court exercised federal question
jurisdiction to adjudicate Plaintiff's claims, it is the federal standard that governs. *Scala v. Moore McCormack
Lines, Inc.*, 985 F.2d 680, 683 n.7 (2d Cir. 1993); *see also Trivedi v. Cooper*, No. 95 Civ. 2075 (DLC), 1996 U.S.
Dist. LEXIS 18715, at *16 n.2 (S.D.N.Y. Dec. 16, 1996) ("Since this Court had federal question jurisdiction
pursuant to 28 U.S.C. § 1331, I will apply federal law in determining the excessiveness of the award.  If this was a
diversity case, I would apply New York law.").

and whether that has been surpassed is not a question of fact with respect to which reasonable

persons may differ, but a question of law.'" *Guzman*, 303 F.R.D. at 197 (quoting *Ahlf*, 386 F.

Supp. 2d at 87).

The Court is persuaded that $40,000 is within the reasonable range of compensatory

damages.[7]  In *Graham v. City of New York*, No. 08-CV-3518 (MKB), 2015 WL 5258741, at *25

(E.D.N.Y. Sept. 10, 2015), the court upheld a jury award of $150,000 in compensatory damages

for false arrest.  The court wrote:  "While the parties failed to bring to the Court's attention any

case directly comparable to this one, $150,000 is within the range of reasonable awards for

Plaintiff's combined injuries including (1) approximately one hour of lost liberty, (2) some minor

physical pain and injury, and (3) past and future emotional harm, including fear, panic and

humiliation." *Id.* at *26.  In *Thomas v. Kelly*, 903 F. Supp. 2d at 262-63, the court recognized

that an individual subjected to a false arrest was entitled to two types of compensatory damages:

(1) for loss of liberty and (2) for physical and emotional distress.  The court upheld a jury's

award of $125,000 in compensatory damages for false arrest when plaintiff was physically

restrained in the snow for approximately forty-five minutes, stepped on and kicked, placed in a

restraint jacket, strapped to a stretcher, and civilly committed for mental health issues.  *Id.* at

---

[7]        Defendants cite numerous cases in their opening brief to support their position that $40,000.00 is excessive.
But the Court finds these cases inapposite.  Without going through each, the Court notes that the jury's $100.00
award of compensatory damages for an unlawful arrest was not at issue in *Cabral v. City of New York*, No. 12 Civ.
4659 (LGS), 2015 WL 4750675 (S.D.N.Y. Aug. 11, 2015).  The issue in *Cabral* was the reasonableness of the jury's
award of *punitive* damages, which requires a very different analysis.  Punitive, not compensatory, damages, were
also at issue in *Hardy v. City of Milwaukee*, 88 F. Supp. 3d 852 (E.D. Wis. 2015), and *Jacox v. Johnson*, No. 1-02-
1163-T, 2004 U.S. Dist. LEXIS 8772 (W.D. Tenn. May 4, 2004).  In *Willowby v. City of Philadelphia*, 946 F. Supp.
369 (E.D. Pa. 1996), and *Smith v. City of Oakland*, Nos. C 07-6298 MHP; C 07-4179 MHP, 2011 U.S. Dist. LEXIS
85989 (N.D. Cal. Aug. 4, 2011), the *court,* not a jury, awarded the plaintiffs compensatory damages that Defendants
here identify as much lower than the jury's award.  To the extent that Defendants are relying on these cases to
pinpoint lower compensatory damages awards than the jury awarded here, the Court finds these cases unpersuasive
on the question of whether this jury's award was excessive.  There is a range of reasonableness in compensatory
damages awards.  While a lower verdict would have been reasonable, that does not mean the jury's verdict here was
unreasonable.

264-65.[8]  In *Gardiner v. Federated Dep't Stores, Inc.*, 907 F.2d 1348 (2d Cir. 1990), the jury had

awarded plaintiff compensatory damages of $150,000 for deprivation of liberty and another

$150,000 for pain and suffering when he was detained for approximately eight hours and

suffered physical and emotional injury from being punched and berated, *id.* at 1350-51; the

Second Circuit remitted the compensatory damages award of $150,000 for loss of liberty to

$50,000; but upheld the $150,000 for pain and suffering, *id.* at 1353.

Defendants argue that the cases cited by Plaintiff "actually support the fact that

[Plaintiff's] award is excessive and unreasonable" and argue for reductions of the awards in

those cases to conform to the facts in the instant case, *e.g.*, Ragusa was held for half as long as

the plaintiff in X case so the verdict in that case should be reduced by 50%; further reductions

should be taken for other factual differences, etc.  Defs. Reply at 7-10.  But Defendants' overly-

formulaic arguments are inconsistent with the case law, which recognizes that mechanical

calculations ignore the fact that the Court must consider the unique circumstances of each case.

As Judge Sullivan put it in *Abdell v. City of New York*, No. 05-cv-8453 (RJS), 2014 WL

3858319, at *3 (S.D.N.Y. Aug. 5, 2014):  "There is . . . no requirement that a jury compute

damages on an hourly basis.  The jury could have rationally determined that the injury of being

wrongfully arrested and imprisoned – fear, uncertainty, shame, and loss of dignity and agency –

is approximately the same whether the detention lasted 20 hours or 40 hours."

The Court is also not persuaded by Defendants' argument that the verdict is excessive

because Plaintiff "provided absolutely no support other than his own self-serving testimony that

he actually did suffer the emotional injuries he claims . . . ."  Defs. Mem. at 14.  First, who better

---

[8]   An appeal was dismissed without prejudice after the district court vacated the jury verdict and ordered a
new trial upon learning that the plaintiff had agreed to give a portion of any verdict to one of the witnesses if she
testified favorably on his behalf.  *See Thomas v. City of New York*, 293 F.R.D. 498, 500-01 (S.D.N.Y. 2013).

than the Plaintiff to describe the physical and psychological impact of being manhandled by the Defendants?  The Defendants may think his testimony was self-serving and not credible, but the jury found to the contrary.  Moreover, as Plaintiff notes, in a "garden variety" emotional distress claim, "the evidence of mental suffering is generally limited to the testimony of the plaintiff, who describes his or her injury in vague or conclusory terms, without relating either the severity or consequences of the injury," and courts have recognized that such claims can often merit awards of $30,000.00 to $125,000.00.  *Roberts, v. United Parcel Serv., Inc.*, No. 13-CV-6161, 2015 WL 4509994, at \*24 (E.D.N.Y. July 27, 2015) (internal quotation omitted).  Even if this jury's award were limited to emotional distress damages, it would fall within the reasonable range.  But here, the jury's award of compensatory damages was not limited to a single category of injury.  The jury heard testimony about a variety of injuries, including: (1) the violation of his rights by being wrongfully stopped and held for fifteen to twenty-five minutes; (2) being cursed at and forcefully pulled from his car in a way that caused physical pain; and (3) emotional distress—fear, anxiety, insomnia—caused by a late night unpleasant encounter with people who are supposed to protect and serve, not abuse and berate.  The jury awarded Plaintiff $40,000.00 in compensatory damages in light of *all* of Plaintiff's injuries, not just his emotional distress.

The Court notes, moreover, that Defendants presented to the jury the arguments that they make in their post-trial briefs; the jury heard the arguments but still awarded $40,000.00 in compensatory damages.  "While a jury has broad discretion in measuring damages, it 'may not abandon analysis for sympathy for a suffering plaintiff and treat an injury as though it were a winning lottery ticket.'"  *Scala*, 985 F.2d at 684 (quoting *Nairn*, 837 F.2d at 568).  But the verdict here does not suggest that this jury was so swayed by emotion that it abandoned reason out of sympathy for Mr. Ragusa.  Instead, the verdict suggests a methodical jury, that weighed the evidence and found both for and against the Plaintiff.

9

In sum, the jury's award of $40,000 in compensatory damages does not shock the conscience of the Court and, therefore, the jury's verdict will not be disturbed.

## CONCLUSION

For the foregoing reasons, Defendants' Post-Trial Motion to Dismiss Plaintiff's remaining claims against Defendants, City of New York, Bloomberg and Kelly, and to Alter the Judgment (Dkt. 110) is hereby DENIED.  Plaintiff must file any Amended Complaint on ECF no later than **February 5, 2016**.  Counsel for all parties are directed to appear for a status conference in Courtroom 443 of the Thurgood Marshall United States Courthouse on **February 19, 2016 at 10:00 a.m.**  No later than **February 12, 2016,** the parties must submit a joint letter to the Court reporting on the status of the case and proposing how to proceed with the case and any briefing on attorney's fees.  The Clerk of Court is respectfully directed to close Docket Entry 110.

**SO ORDERED.**

Date:  **January 22, 2016**
       **New York, NY**

_____
**VALERIE CAPRONI**
**United States District Judge**